SAVE OUR CUMBERLAND
MOUNTAINS, INC., et al.,
Plaintiffs,

v.

Donald P. HODEL, et al., Defendants.

Civ. A. No. 81–2238.

United States District Court,
District of Columbia.

July 25, 1985.

See also, D.C.Cir., 725 F.2d 1434.

Joseph A. Yablonski, Yablonski, Both & Edelman, L. Thomas Galloway, Galloway & Greenberg, Washington, D.C., for plaintiffs.

Jose R. Allen, Alfred T. Ghiorzi, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

CHARLES R. RICHEY, District Judge.

This case is before the Court on plaintiffs' petition for an award of fair and reasonable attorneys' fees and costs. This action was brought over four years ago by the plaintiffs, three Appalachian citizens groups, in an effort to curb the widespread avoidance of the environmental protections set forth in the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201, *et seq.* (the "Act"), through the misuse and abuse of the "two-acre" exemption to that Act. Under the "two-acre" exemption, the provisions of the Act would not apply to "the extraction of coal for commercial purposes where the surface mining operation affected two-acres or less." 30 U.S.C. § 1278(2). Specifically, mines falling under this exemption are not required to obtain the normally required permits or pay fees into the Abandoned Mine Reclamation Fund. Further, there is no statutory requirement that such mines be inspected.

In March 1979 a regulation was promulgated by the Office of Surface Mining ("OSM") construing the applicability of the two-acre exemption. 30 C.F.R. § 700.11(b) (1982). On November 27, 1979, OSM suspended a portion of that regulation which applied to "physically unrelated sites." 44 Fed.Reg. 67,942 (1979). In January 1981, the Secretary of the Interior published a second two-acre rule. 46 Fed.Reg. 7,902 (1981). That second rule however was met with a series of postponements, deferrals and suspensions, until it was finally withdrawn completely.

Plaintiffs brought suit under Section 520 of the Act, which expressly provides for such "citizens' suits" which Congress saw as a necessary back-up to the limited ability of the OSM to inspect and monitor the thousands of surface mines around the country. H.R.Rep. No. 95-218, 95th Cong., 1st Sess. 88-89 (1977). An award of reasonable attorneys' fees and costs for these "citizens' suits" is authorized by Section 520(d).

Count I of the plaintiffs' Complaint alleged that the suspension and withdrawal of the second two-acre rule was arbitrary and capricious and violated the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553. Counts II and III alleged that the Secretary violated the Act by failing to perform inspections, institute enforcement procedures,

and collect reclamation fees at numerous mining concerns which were alleged to have been evading the terms of the Act by improperly claiming the two-acre exemption.

On July 8, 1982, this Court granted the secretary's motion to dismiss Counts II and III for lack of venue. The parties thereupon filed cross-motions for summary judgment on the remaining Count I. By Order of October 28, 1982, 558 F.Supp. 22 (D.C.D.Col.1982), the Court dismissed Count I as moot following promulgation of a new two-acre rule by OSM. 47 Fed.Reg. 33,424 (1982). On appeal, both orders were affirmed by the Court of Appeals, 725 F.2d 1422 (D.C.Cir.1984). Plaintiffs thereupon filed a petition for rehearing *en banc*, which was granted. Before that rehearing was scheduled to take place, however, the Secretary waived the venue defense, and the parties jointly requested that the case be remanded back to this Court for further proceedings. The parties then engaged in lengthy settlement discussions which resulted in an agreement being signed on June 6, 1985.

 The first question with which the Court must deal when acting upon a fee petition such as this is whether the petitioning party can be considered a "prevailing party" in the litigation and thus entitled to an award. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Clearly, such is the case here. The action succeeded completely in its two major objectives. First, the promulgation of a new two-acre rule was the direct result of this litigation being filed. It appears to the Court to be more than mere coincidence that the new rule was published on the very day that the cross-motions for summary judgment were due on Count I. Second, the settlement agreement provides for a nationwide plan to curb the abuses which had been rampant in the past by establishing a detailed and realistic timetable for identification of two-acre sites, subsequent inspection and enforcement action against the sites, and citizen monitoring to ensure the Secretary complies with the agreement. It is, of course, well settled that fees are equally appropriate when relief is obtained through settlement as when ordered by the Court. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).

The Secretary argues, however, that the plaintiffs did not prevail on Count I, in that they claim that the promulgation of the new two-acre rule was not a result of this lawsuit, but was done pursuant to a review of a wide spectrum of rules promulgated under the Act, of which the two-acre rule was but one. But the Secretary's brief goes on to admit that this suit was "in part, a catalyst which forced the agency to issue a new rule." Defendant's Opposition at 10. The Court notes further that the settlement agreement provides that the regulation promulgated in August 1982 would be retroactively applied to both the collection of reclamation fees and the reclamation of minesites. Thus, it is clear that the end result is precisely that which the plaintiffs sought in their complaint under this Count—the effective reinstatement of the two-acre rule to cover the period when it was not in effect. The fact that the second two-acre rule itself was not reinstated is not controlling where, as here, the result was the same as if that rule had been so reinstated. In fact, the new rule promulgated by OSM as a result of this litigation was if anything stronger than the rule the plaintiffs sought to have reinstated.

 Once entitlement has been established, the Court must apply a three-part analysis to determine the appropriate award. First, the Court must determine the number of hours reasonably expended in the litigation; second, there must be a determination of a reasonable hourly rate by which these hours can be multiplied to arrive at a "lodestar" figure; and third, the "lodestar" may, in certain instances be adjusted through the use of multipliers if merited. *Blum v. Stetson*, 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C.Cir.1980) (*en banc*).

 The first step of the lodestar analysis is to determine the number of hours

reasonably expended by the prevailing attorneys in the litigation. During the more than four-year history of this case, two attorneys, Joseph A. Yablonski and L. Thomas Galloway, were principally responsible for prosecuting the case on behalf of the plaintiffs. Less than a hundred hours of additional work was performed by two other attorneys, Daniel B. Edelman, a partner of Mr. Yablonski, and Lee Bishop, who was active only in the very early stages of the case. Mr. Yablonski acted as lead litigator while Mr. Galloway was in charge of the substantive elements of proof as well as the settlement negotiations. The Court finds that, given the background of these two members of the bar, this division of labor was reasonable and efficient. Mr. Yablonski has a great deal of litigation experience in complex cases garnered over a period of close to twenty years. Mr. Galloway has had a coal-related practice for over ten years, and is considered on of the leading experts on the Surface Mining Act. The Secretary's argument that it was wasteful to assign two senior partners of the caliber of Messrs. Yablonski and Galloway to this case is without merit. It is completely reasonable to utilize the talents of high quality attorneys such as these men clearly are in a case of such importance and magnitude.

■ Mr. Yablonski seeks compensation for a total of 410.25 hours he expended on this litigation. Mr. Galloway seeks an award based upon 711.50 hours spent working on this case. The Court finds that both these figures are reasonable given the circumstances of this case. First, this action spanned a period of over four years and involved issues of great importance and complexity. Second, of the 1121.75 total hours claimed by the two lead counsel, 318.75, or nearly 30% of that total, were spent developing the inventory necessary for this litigation to proceed. This inventory has already been compensated for by a $50,000 payment from the Secretary. Thus, the total the Court need now deal with is 803 hours, well within a reasonable number of hours which this Court can approve.

■ Further, the Court does not agree with the Secretary that substantial hours should be disallowed because of duplicative work between this case and the companion "megabucks" case, *SOCM v. Clark*, D.D.C. Civil No. 81–2134. These suits were brought and prosecuted separately. Each case presented unique issues unto itself which required separate research, briefing and presentation before the Court of Appeals, which in turn issued separate decisions. There was no suggestion at any prior stage of these actions that they be consolidated for any purpose whatsoever. Thus, two separate petitions for re-hearing were required. Not even after the Court of Appeals granted the petition in this case for re-hearing was it thought necessary by any party or by the Appeals Court to consolidate.

■ The Secretary then argues that the hours spent on settlement negotiations were excessive and protracted. The Court again disagrees with that allegation. There is no indication anywhere in the record that the plaintiffs' counsel acted in anything but good faith throughout the negotiations. On the contrary, the Court is fully aware of the difficulties which plaintiffs' counsel encountered in trying to put together a settlement agreement amenable to all sides. If the settlement negotiations were of greater length than the Secretary might have liked, a major factor in that delay was the inability of the numerous governmental entities to agree on what ought to be done to resolve the issues in the case. Thus, the Court finds that the 324.50 hours claimed for settlement negotiations are reasonable.

After a careful review of the record and the declarations submitted with the fee petition, the Court finds that all the hours claimed for Mr. Yablonski, Mr. Galloway, Mr. Edelman and Mr. Bishop are reasonable, and therefore compensable. The Court also finds the number of hours claimed for the services of law clerks and paralegals, which are largely undisputed, to be reasonable, except for the 291.25 hours claimed for Galloway paralegal work

on the inventory. It was the Court's understanding that the $50,000 payment was for the entire inventory, and not merely a down payment thereon. Therefore, these hours will be disallowed to the extent that they cause the final total of the inventory to surpass the $50,000 amount agreed upon by the parties. The Court calculates that, at the $30 an hour rate requested by the plaintiffs, a rate the Court finds fair and reasonable, a total of 218.33 hours of para-legal time spent working on the inventory will be disallowed. The remaining 72.92 hours spent by Galloway paralegals, multiplied by the $30 an hour rate, equals $2187.60. When this figure is added to the $47,812.50 requested by Mr. Galloway as compensation for his efforts in preparing the inventory, the total equals $50,000.10 which is almost precisely the amount agreed upon by the parties. The $50,000 payment already made by the government for the inventory will be deducted out from the final amount of the total award.

■ The second step in the loadstar analysis is a determination of a reasonable hourly rate for each attorney involved in the litigation. *Blum v. Stetson*, 104 S.Ct. at 1541. Such a reasonable hourly rate is that "prevailing in the community for similar work." *Id.* at 1547. For an attorney who has a customary rate at which he or she bills fee-paying clients, the prevailing community rate has been said to be that customarily charged rate. *Laffey v. Northwest Airlines*, 746 F.2d 4 (D.C.Cir. 1984). However, for an attorney who has no customary hourly rate, the Court must look to the prevailing community rates in order to determine the appropriate hourly rate. *Id.; Blum v. Stetson*, 104 S.Ct. at 1546, 1547; *Copeland v. Marshall*, 641 F.2d at 892.

■ Here, Mr. Yablonski and Mr. Galloway seek a rate of $150 per hour, and Mr. Bishop a rate of $110. The Court finds these rates to be reasonable and within the bracket of prevailing rates within this community for similar work. Mr. Yablonski has over twenty years experience in the law, much of it working in highly complex matters of national importance. Mr. Galloway has been practicing for almost twelve years in a very specialized field in which he has become a noted authority and leading national expert. Because of their background and experience, they should be paid an hourly rate commensurate with prevailing community standards. *Blum v. Stetson*, 104 S.Ct. at 1541. For an attorney with 11 to 19 years of experience, the reasonable rate has been found to be $150. *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C.1983), *affirmed, Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C.Cir.1984); *Thompson v. Barrett*, 599 F.Supp 806, 814 (D.D.C.1984). Mr. Edelman seeks $125 an hour which is his customary billing rate. Under the Court of Appeals decision in *Laffey*, the Court finds this to be clearly reasonable.

Once the loadstar figure is achieved, the case law allows for that figure to be adjusted by the use of multipliers in certain very exceptional circumstances. *Laffey*, 746 F.2d at 13; *Murray v. Weinberger*, 741 F.2d 1423, 1428 (D.C.Cir.1984); *Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211, 218 (D.C.Cir.1984); *Donnell v. United States*, 682 F.2d 240, 253 (D.C.Cir.), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1982). Here, the plaintiffs seek two independent multipliers. First, they seek a 20% multiplier on all work performed prior to the filing of the joint motion for remand based upon what they perceive as the exceptional risk they faced that they would never obtain compensation at all in this case. Second, they seek a 100% multiplier for the 44.75 hours logged in preparing and filing the petition for re-hearing in the Court of Appeals.

■ Initially, it must be noted that the case law in this area regards the loadstar as the presumptively reasonable fee to which an attorney is entitled. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940; *Murray*, 741 F.2d at 1428. In *Blum v. Stetson*, 104 S.Ct. at 1541, the Supreme Court reaffirmed this principle, holding that only in exceptional circumstances will the loadstar be inadequate to fully compensate the attorneys un-

der the meaning of the relevant statute. *Id.* at 1548. The Court there stated that it is a "rare case in which an upward adjustment to the presumptively reasonable fee of rate times hours is appropriate." *Id.* at 1550. Thus there exists a "heavy burden" on the petitioning party to justify any upward adjustments. *Id.* This burden can only be met if the prevailing attorney makes a specific claim based on a particular factor and supported by specific evidence. *Murray,* supra at 1429. Concurrent with this burden is the duty of the Court to justify with particularity why an adjustment is needed to fully compensate the attorneys. *Blum v. Stetson,* 104 S.Ct. at 1548–50.

This burden appears to be particularly heavy when the requested multiplier is based on risk or contingency. In the recent decision of *Blum v. Stetson, supra,* the Supreme Court said: "We have no occasion in this case to consider whether the risk of not being the prevailing party ... may ever justify an upward adjustment." *Id.* at 1550 n. 17. The Court of Appeals, in *Murray v. Weinberger,* emphasized that *Blum* did not expressly approve upward adjustments of the loadstar for contingency, and that, in any event, "an upward adjustment to compensate for the risk of losing ... is permissible only in an *exceptional case.*" 741 F.2d at 1432 (emphasis supplied).

Plaintiffs argue that this is just such an "exceptional case" envisioned by the Court in *Murray.* They note that when this action was filed there were no form complaints or models to be followed, nor did there exist any statistical data of any sort on which counsel's risk of not being compensated could be calculated. They also point out that they knew going in that the defendants had very strong venue and other procedural defenses. Indeed, this very Court held against them on the venue issue and was affirmed by the Court of Appeals prior to the petition for re-hearing being granted. The Defendants, on the other hand, argue that the risk plaintiffs took of non-compensation was a direct result of plaintiffs' tactical choice in bringing this case in this district, and that, in any event,

the plaintiffs are not entitled for any additional award for achieving only a procedural success.

■■■ The Court finds that the plaintiffs have sustained their burden of proof that this was an "exceptional case" under *Blum* and *Murray.* The risks of non-compensation were indeed substantial. The plaintiffs fought an uphill battle all the way until the petition for re-hearing was granted. Only then did the government agree to withdraw their venue defense and sit down to negotiate a settlement. Both this Court and the Court of Appeals found against the plaintiffs on the venue issue, thus illustrating the degree of difficulty the plaintiffs faced in having their case heard at all in this district, much less prevailing on all the issues. Thus some small upward adjustment on those hours of service prior to the remand sought here is plainly reasonable and will be allowed. However, the Court finds that 10%, rather than the 20% sought by the plaintiffs, will be sufficient to fully compensate them for the risks involved in bringing this litigation. The Court, however, will not award any multiplier to the 318.50 hours spent by Mr. Galloway on the inventory. That remains a separate item, fully compensated for by the $50,000 amount agreed upon by the parties.

■■ The second multiplier sought by the plaintiffs is a 100% upward adjustment for the "exceptional success" they obtained in having their petition for re-hearing *en banc* granted in the Court of Appeals. Plaintiffs only seek to have this multiplier apply to the 44.75 hours spent actually working on the re-hearing petition. The Court agrees that some upward adjustment of these hours is appropriate in this instance. The Supreme Court in *Blum, supra,* held that in a rare case an upward adjustment may be warranted by virtue of exceptional results achieved. The granting of plaintiffs' petition for re-hearing where the panel decision was unanimous is most certainly an exceptional result. The Court notes that petitions for re-hearings *en banc,* while often filed, are rarely granted.

Indeed, one of the standards of Rule 35(a) of the Federal Rules of Appellate Procedure which relates to such applications is that "the proceeding involves a question of exceptional importance." Thus, under the facts of this case, the hours spent on the petition for re-hearing will be adjusted upward. However, the Court does not agree with the plaintiffs that the loadstar for this work ought to be doubled. Instead, the Court will award a 50% multiplier for the exceptional success achieved on the petition.

The final item which the Court must decide is whether the plaintiffs are entitled to all of the $4,195.11 in costs and expenses which they claim. The defendant argues, without citation, that costs other than reasonable attorneys fees and expert witness fees are not compensable. However, the test for compensability turns on whether the claimed expenses are of a type routinely billed to clients, whether they are of a reasonable amount, and are adequately documented. *Laffey*, 572 F.Supp. at 382–83; *Palmer v. Shultz*, 594 F.Supp. 433, 442 (D.D.C.1983). The evidence in the record before the Court shows that these expenses claimed here are of a type routinely passed on to clients by plaintiffs' counsel. The Court finds that, given the scope of this litigation, the amount requested is fair and reasonable and will be awarded.

Based on the forgoing discussion, the Court hereby awards plaintiffs the total amount of $147,670.96. This figure reflects the reasonable hours expended by all attorneys, para-legals and law clerks in this case multiplied by a reasonable hourly rate for each. In addition, the figure includes a 50% upward adjustment on the 44.75 hours spent on the rehearing petition, and a 10% upward adjustment for the time spent before the remand back to this Court. The figure also reflects a $50,000 deduction to take into account the payment agreed on and already paid to the plaintiffs for work done on the inventory. Finally, the figure includes $4,195.11 in reasonable litigation costs and expenses. The breakdown is as follows:

| | Hours × | Hourly Rate | = Lodestar × | Mult. | = Total Fees |
|---|---|---|---|---|---|
| **Joseph A. Yablonski** | | | | | |
| Pre-Appeal | 104.00 | $150 | $15,600.00 | 1.1 | $ 17,160.00 |
| Appeal (except rehearing) | 98.75 | $150 | $14,812.50 | 1.1 | $ 16,293.75 |
| Rehearing Petition | 42.25 | $150 | $ 6,337.50 | 1.5 | $ 9,506.25 |
| Post Remand | 125.00 | $150 | $18,750.00 | – | $ 18,750.00 |
| Fee Application | 40.25 | $150 | $ 6,037.50 | – | $ 6,037.50 |
| Subtotal | 410.25 | | | | $ 67,747.50 |
| | | | | | |
| **L. Thomas Galloway** | | | | | |
| Inventory | 318.75 | $150 | $47,812.50 | – | $ 47,812.50 |
| Pre-Appeal | 29.25 | $150 | $ 4,387.50 | 1.1 | $ 4,826.25 |
| Appeal (except rehearing) | 80.00 | $150 | $12,000.00 | 1.1 | $ 13,200.00 |
| Rehearing Petition | 2.50 | $150 | $ 375.00 | 1.5 | $ 562.50 |
| Post Remand | 246.75 | $150 | $37,012.50 | – | $ 37,012.50 |
| Fee Application | 34.25 | $150 | $ 5,137.50 | – | $ 5,137.50 |
| Subtotal | 711.50 | | | | $ 108,551.25 |

| | Hours × | Hourly Rate | = Lodestar × | Mult. = | Total Fees |
|---|---|---|---|---|---|
| **Daniel B. Edelman** | | | | | |
| Pre-Appeal | 36.25 | $125 | $ 4,531.25 | 1.1 | $ 4,984.38 |
| Appeal | 10.75 | $125 | $ 1,343.75 | 1.1 | $ 1,478.12 |
| Fee Application | 1.00 | $125 | $ 125.00 | -- | $ 125.00 |
| Subtotal | 48.00 | | | | $ 6,587.50 |
| **Lee Bishop** | | | | | |
| Pre-Appeal | 50.00 | $110 | $ 5,500.00 | 1.1 | $ 6,050.00 |
| **Law Clerks and Para-Legals** | | | | | |
| G&G | 72.92 | $ 30 | $ 2,187.60 | -- | $ 2,187.60 |
| Y.B.&E. | 78.40 | $ 30 | $ 2,352.00 | -- | $ 2,352.00 |
| SUBTOTAL | | | | | $ 193,475.85 |
| Less Payment for Inventory | | | | | –$ 50,000.00 |
| | | | | | $ 143,475.85 |
| Costs and Expenses Reasonably Incurred | | | | | $ 4,195.11 |
| TOTAL AWARD | | | | | $ 147,670.96 |

For the reasons set forth above, it is by the Court this 24 day of July, 1985, hereby

ORDERED that the defendant in this action remit the amount of $147,670.96 to the plaintiffs in satisfaction of the plaintiffs' application for an award of fair and reasonable attorneys' fees and costs.