**NATURAL RESOURCES DEFENSE COUNCIL, INC., Petitioner,**

v.

**UNITED STATES NUCLEAR REGULATORY COMMISSION, and the United States of America, Respondents (Two cases).**

**Nos. 80–1863, 80–1864.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 30, 1982.

Decided June 11, 1982.

As Amended June 11, 1982.

---

Ellyn R. Weiss, Washington, D. C., with whom Lee L. Bishop, S. Jacob Scherr, and William S. Jordan, III, Washington, D. C., were on the brief, for petitioner in Nos. 80–1863 and 80–1864.

Marjorie S. Nordlinger, Atty., Harvey J. Shulman, Acting Sol., U. S. Nuclear Regulatory Com'n, Washington, D. C., with whom Maria A. Iizuka and Peter R. Steen-land, Jr., Attys., Dept. of Justice and James A. Fitzgerald, U. S. Nuclear Regulatory Com'n, Washington, D. C., were on the brief, for respondents in Nos. 80–1863 and 80–1864.

James W. Moorman and Dirk D. Snel, Washington, D. C., also entered appearances for respondents.

Before WALD, EDWARDS and GINS-BURG, Circuit Judges.

HARRY T. EDWARDS, Circuit Judge:

The petitions for review in this case arise out of an adjudicatory proceeding before the Nuclear Regulatory Commission ("NRC" or "Commission") concerning proposed amendments to the license of Nuclear Fuel Services, Inc., a facility in Erwin, Tennessee ("NFS-Erwin") that produces a special nuclear fuel used by the Navy. Petitioner Natural Resources Defense Council, Inc. ("NRDC") requested a full adjudicatory hearing on the license amendments, as provided for in the NRC regulations at that time. In response, the Commission promulgated, without notice and comment, an immediately effective rule authorizing the use of alternative hearing procedures for matters involving "military and foreign affairs functions." The Commission simultaneously issued an order granting NRDC's hearing request but providing, under the new "military functions" rule, only a "legislative" type of hearing with limited procedural rights.

NRDC has petitioned for review of both the Commission's adoption of the "military functions" rule and its simultaneous application of the rule to the NFS-Erwin proceeding. NRDC contends that: (1) the "military functions" rule is invalid because it was initially promulgated without notice and comment; (2) the rule cannot be applied to the ongoing NFS-Erwin proceeding because it would substantially prejudice NRDC by eliminating its rights to, *inter alia*, cross-examination and discovery; and (3) the rule cannot properly be applied to

the NFS-Erwin proceeding because that proceeding does not involve "military or foreign affairs functions." As explained in greater detail below, we conclude that none of these issues is properly before the court at this time. The first issue is now moot because the NRC has repromulgated the "military functions" rule in accordance with the notice and comment requirements of section 553 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1976). The remaining two issues concern interlocutory actions by the Commission that are not yet subject to judicial review. Consequently, we dismiss the petitions so that the Commission may conclude the NFS-Erwin proceedings and reach a final decision on the proposed license amendments.

## I.  HISTORY OF THE PROCEEDINGS

Operating under a license issued by the NRC, the NFS-Erwin facility produces a special, highly enriched uranium fuel that is used in the nuclear reactors that power Navy nuclear vessels. Historically, NFS-Erwin has had difficulty meeting certain requirements in its license and in the NRC regulations for maintaining control over and accounting for special nuclear material. See 10 C.F.R. § 70.51–.59 (1981). On more than one occasion the Commission has required the facility to shut down in order that a reinventory of its special nuclear materials might be conducted. This case has its genesis in a 1979 shutdown and reinventory of NFS-Erwin stemming from the inability of officials at the facility to account for amounts of nuclear material in

excess of the limits specified in its license. After conducting an inquiry into the problems at NFS-Erwin, the Commission issued an order on January 21, 1980, J.A. 24, 109–11, authorizing the facility to resume operations under revised physical security measures and material control and accounting requirements. The order also amended the NFS-Erwin license by relaxing its reinventory and shutdown requirements, thereby increasing the permissible amounts of "unaccounted for" nuclear material in the facility.

On February 6, 1980, petitioner NRDC requested a hearing on the proposed license amendments, as provided for in the Atomic Energy Act of 1954 [1] and in the NRC regulations. J.A. 29–64. At that time, the Commission regulations provided for full hearing procedures that included discovery and cross-examination. See 10 C.F.R. § 2.740–.744 (1981). On June 26, 1980, however, the Commission promulgated, without notice and comment, an immediately effective rule allowing the agency to use alternative hearing procedures for matters involving "military and foreign affairs functions." J.A. 178–89; 45 Fed.Reg. 45,253 (July 3, 1980).[2] Essentially, the new rule incorporated the language of the "military and foreign affairs" exception to the formal adjudication requirements in the APA. 5 U.S.C. § 554(a)(4) (1976).[3] The Commission then issued an Order and a Notice of Hearing that granted NRDC's hearing request but provided only a limited, "legislative" type hearing pursuant to the new "military functions" rule. J.A. 174–77, 190–93.

---

1.  Section 189 of the Atomic Energy Act of 1954 provides that
    [i]n any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license . . . the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding. .
    42 U.S.C. § 2239(a) (1976).

2.  The new rule provided:
    Consistent with due process requirements the Commission may provide alternative procedures in adjudications to the extent that there is involved the conduct of military or foreign affairs functions.

J.A. 182; 45 Fed.Reg. at 45,254.

3.  The relevant provision of the APA states:
    (a) This section applies, according to the provisions thereof, in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, except to the extent that there is involved—
    . . . .
    (4) the conduct of military or foreign affairs functions. . . .
    5 U.S.C. § .554(a)(4) (1976).

NRDC filed two petitions for review in this court. The petition in No. 80–1864 challenged the adoption and application by NRC of the "military functions" rule on the grounds that (1) it was unlawfully promulgated without the notice and comment procedures required by the APA, 5 U.S.C. § 553 (1976), and (2) it could not lawfully be applied to the ongoing NFS-Erwin proceeding because it would substantially prejudice NRDC by eliminating its rights to, *inter alia*, cross-examination and discovery. The petition in No. 80–1863 challenged the NRC order invoking the "military functions" rule to limit the procedures available to NRDC in the NFS-Erwin proceeding on the ground that the proceeding did not involve "military or foreign affairs functions" within the meaning of both section 554 of the APA and the NRC rule.[4] On September 29, 1980, a motions panel of this court granted NRDC's motion in No. 80–1864 for a stay of both the "military functions rule" and the order granting NRDC a limited hearing under that rule.[5]

On September 30, 1981, the NRC initiated informal rulemaking proceedings to reconsider the "military functions" rule and its application to the NFS-Erwin proceeding. The Commission proposed a "military functions" rule that was essentially the same as the one it had previously issued. It asked for comments on whether the rule should be adopted in that form and on whether it should apply to ongoing proceedings in which a hearing already had been request-

ed. 46 Fed.Reg. 47,799 (Sept. 30, 1981). On January 26, 1982, the Commission adopted the "military functions" rule as proposed, with a section specifically making it applicable to ongoing proceedings. Supp.J.A. 91–106; 47 Fed.Reg. 4490 (Feb. 1, 1982) (to be codified at 10 C.F.R. § 2700a).[6]

This court postponed consideration of the case while the NRC conducted its rulemaking.[7] Now that the Commission has completed that rulemaking, the NRDC petitions for review are once again before the court. As hereafter explained, we conclude that considerations of mootness and finality prevent us from reaching the issues raised in those petitions.

## II. MOOTNESS

■ NRDC continues to press its argument that the NRC promulgated its "military functions" rule in violation of the notice and comment requirements of section 553 of the APA. In light of the Commission's repromulgation of the rule after providing notice and opportunity for comment, we conclude that this issue is now moot.

The "judicial Power" under Article III extends only to "Cases" and "Controversies." U.S.Const. art. III, § 2. We therefore lack jurisdiction to pass upon a question in the absence of a "justiciable" controversy. The Supreme Court has made it clear that "no justiciable controversy is presented . . . when the parties are asking for an advisory opinion, [or] when the ques-

---

4. In the petition in No. 80–1863, NRDC also contended that the NRC order violated the hearing requirement in § 189(a) of the Atomic Energy Act, 42 U.S.C. § 2239(a) (1976). *See* note 1 *supra.*

5. In No. 80–1863, the motions panel held in abeyance as not yet ripe for decision NRDC's motion for a stay and NRC's motion to dismiss.

6. The final rule provided:
   (a) Consistent with 5 U.S.C. 554(a)(4) of the Administrative Procedure Act, the Commission may provide alternative procedures in adjudications to the extent that there is involved the conduct of military or foreign affairs functions.
   (b) This rule shall apply to proceedings in progress where hearings have already been

requested or ordered as well as to future proceedings.
Supp.J.A. 106; 47 Fed.Reg. at 4493.

7. The NRC notified the court on September 25, 1981 that it was reconsidering the "military functions" rule pursuant to notice and comment proceedings. After soliciting the parties' views on whether this rulemaking rendered the case moot, the court issued an order on October 14, 1981 that postponed oral argument pending final action by the NRC in the rulemaking, consolidated the petitions in Nos. 80–1864 and 80–1863, and ordered that the previously issued stay of September 29, 1980 remain in effect pending a final decision by the court. The records in both review proceedings were remanded to the NRC, to be returned after completion of the rulemaking.

tion sought to be adjudicated has been mooted by subsequent developments . . . ." *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968) (footnotes omitted). Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue. *See, e.g., Commissioner v. Shapiro*, 424 U.S. 614, 622–23 n.7, 96 S.Ct. 1062, 1068 n.7, 47 L.Ed.2d 278 (1976) (IRS's proper service of new notice of deficiency and new notices of levy moots question whether previous levies and notice of deficiency were procedurally defective under applicable statute); *Sannon v. United States*, 631 F.2d 1247, 1250–51 (5th Cir. 1980) (case can be mooted by amendment of regulations or promulgation of new regulations providing relief requested).[8]

NRDC has maintained that the promulgation by NRC of the "military functions" rule was unlawful because it deprived NRDC and other members of the public of the right to participate in the rulemaking process by not providing notice and an opportunity to comment on the rule. The Commission undeniably provided that opportunity, however, when it repromulgated the rule in accordance with the requirements of section 553 of the APA. Petitioner does not contend that there was any infirmity in the Commission's repromulgation of the rule; rather, it continues to focus its attack on the initial adoption of the rule without notice and comment. Even if this attack was originally well-founded, we can hardly order the NRC at this point to do something that it has already done. As to this issue, NRDC

> has obtained everything that it could recover . . . by a judgment of this court in its favor. The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. . . . But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.

*California v. San Pablo & Tulare Railroad*, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893).[9] In effect, NRDC seeks a decla-

8. We recognize that, ordinarily, " 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.' " *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). The NRC's repromulgation of the "military functions" rule pursuant to notice and comment, however, is more accurately characterized as the provision of appropriate relief to petitioner than as the "cessation of illegal conduct." Moreover, voluntary cessation of illegal conduct can moot an issue when there is no reasonable expectation that the violation will recur, and interim relief or intervening events have completely eradicated the effects of the alleged violation. *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383; *City of Waco v. EPA*, 620 F.2d 84, 87 (5th Cir. 1980). These standards are met here, since the provision of notice and comment has enabled NRDC and the public to participate in the rulemaking process concerning the "military functions" rule and there is no reasonable expectation that the agency will, during the course of the NFS-Erwin proceeding, issue similar rules without notice and comment. *Compare Princeton Univ. v. Schmid*, —— U.S. ——, 102 S.Ct. 867,

70 L.Ed.2d 855 (1982) *with City of Mesquite v. Aladdin's Castle, Inc.*, —— U.S. ——, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982); *see id.* at 1078 n.* (White, J., concurring in part and dissenting in part).

Similarly, although there is an established exception to the mootness doctrine for cases "capable of repetition, yet evading review," *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), in this case there is no reason to believe that the NRC will promulgate other rules without notice and comment during this proceeding or that, if it does, its actions will be so short in duration as to preclude judicial review. *See Dow Chem. Co. v. EPA*, 605 F.2d 673, 678–79 n.12 (3d Cir. 1979).

9. Petitioner relies on *Dow Chem. Co. v. EPA*, 605 F.2d 673 (3d Cir. 1979), in arguing that this issue is not moot. In that case EPA revoked a challenged rule because of the petitioner's charge that it had been invalidly promulgated under the APA. The agency revoked the rule solely because of the alleged procedural irregularities and was in the process of repromulgating a rule with the same substantive provisions. *Id.* at 677–78. The court held that the EPA's revocation of the rule under those circumstances did not moot the *entire case*, specifically the

ration from this court that the initial promulgation of the rule was unlawful, an advisory opinion which federal courts cannot provide.

### III.  FINALITY

NRDC vigorously presses its arguments that the NRC cannot apply the new "military functions" rule in the NFS-Erwin proceeding because no military functions are involved and because applying it in that proceeding would substantially prejudice NRDC.  Our jurisdiction to review the NRC actions, however, is limited.  Section 189(b) of the Atomic Energy Act of 1954, 42 U.S.C. § 2239(b) (1976), provides only for judicial review of "[a]ny final order" entered by the NRC in any proceeding "for the granting, suspending, revoking, or amending of any license ...."  *Id.* § 2239(a).  Under the corresponding jurisdictional provision, 28 U.S.C. § 2342(4) (1976), the court of appeals has exclusive jurisdiction to review "all final orders of the Atomic Energy Commission [now the Nuclear Regulatory Commission] made reviewable by section 2239 of title 42 ...."[10] Consequently, even if the parties agree that the issues raised are properly before the court, these review provisions mandate a jurisdictional inquiry into the finality of the agency actions being challenged.  *Citizens for a Safe Environment v. Atomic Energy*

*Commission,* 489 F.2d 1018, 1020 (3d Cir. 1974).

Courts exercising jurisdiction under 28 U.S.C. § 2342 have narrowly construed the term "final order."  An order is final if it "imposes an obligation, denies a right, or fixes some legal relationship, usually at the consummation of an administrative process."  *Honicker v. NRC,* 590 F.2d 1207, 1209 (D.C.Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 374 (1979); *accord, Illinois Citizens Committee for Broadcasting v. FCC,* 515 F.2d 397, 402 (D.C.Cir.1975).  "Normally in an adjudication a final order is one that disposes of all issues as to all parties.  Viewed in this light a final order in a licensing proceeding under [42 U.S.C.] § 2239(a) would be an order granting or denying a license."  *Citizens for a Safe Environment v. Atomic Energy Commission,* 489 F.2d 1018, 1021 (3d Cir. 1974) (citation omitted); *cf. Western Union International, Inc. v. FCC,* 652 F.2d 136, 143 (D.C.Cir.1980) ("quintessential reviewable order" in rate proceeding is determination regarding the justness and reasonableness of proposed rates).  Strictly interpreted, then, a final order in the adjudicatory proceedings in this case would be a decision on the license amendments challenged by NRDC.  Obviously, the NRC has yet to issue such a final order.[11]  While an agency

petitioner's challenge to the validity of the *substance* of the rule, which the court then went on to address.  There is, of course, no question in this case that NRDC's other arguments concerning the validity of the "military functions" rule and its application to the NFS-Erwin proceeding are not moot.  Only NRDC's procedural attack on the rule's promulgation is moot.  Notably, the court in *Dow* did not even address the merits of petitioner's earlier procedural challenge to the rule, which suggests that it implicitly regarded this issue as moot or that petitioner did not press the argument after the rule was revoked.

10.  The Energy Reorganization Act of 1974, which transferred the licensing and related regulatory functions of the Atomic Energy Commission to the NRC, 42 U.S.C. § 5841(f) (1976), made the judicial review provisions of 28 U.S.C. § 2342 applicable to "[f]inal orders and actions" of the NRC.  42 U.S.C. § 5871(g).

11.  In *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970), the Supreme Court stated that "the relevant considerations in determining finality are whether the process of administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action."  *Id.* at 71, 91 S.Ct. at 209.  While judicial review at this time will not disrupt the NFS-Erwin adjudication, this is not because the "administrative decision-making" process "has reached" such a point, but because that process has not yet really begun.  The incipient nature of the administrative proceeding hardly counsels in favor of a finding of finality.  Nor can we say that legal rights or obligations have been determined.  Although the NRC decision about the procedures to be used in the NFS-Erwin hearing may affect NRDC's procedural rights, that decision can be

order in certain circumstances "may be 'final' even if it is not the last that may be entered," *Ecology Action v. Atomic Energy Commission*, 492 F.2d 998, 1000 (2d Cir. 1974),[12] the agency action challenged by NRDC in this case marks the very beginning of the adjudicatory process. Orders concerning the initiation of adjudicatory proceedings are generally viewed as interlocutory. *E.g., Western Union International, Inc. v. FCC*, 652 F.2d 136, 144 (D.C.Cir. 1980) (FCC acceptance of a tariff not a final order because it "marks only the initiation of a proceeding in which the Commission might resolve satisfactorily all the claims of the parties"); *Gifford-Hill & Co. v. FTC*, 523 F.2d 730, 732–33 (D.C.Cir.1975) (FTC decision to initiate proceeding against company is interlocutory).

■ Essentially, NRDC's arguments challenge the decision of the Commission to limit the procedures available in the NFS-Erwin proceeding by invoking the "military functions" rule.[13] Ordinarily, however, "[a]n agency's procedural or evidentiary rulings in the course of a proceeding do not constitute a final order justifying judicial review except in extreme instances where the action is held to constitute an effective deprivation of appellant's rights." *Thermal Ecology Must Be Preserved v. Atomic Energy Commission*, 433 F.2d 524, 526 (D.C.Cir. 1970).[14] Limiting at the outset the procedures available to petitioner in the NFS-Erwin proceeding does not constitute such an "extreme instance" justifying immediate judicial review.

Most importantly, the availability of relief on review of a final order in the license proceeding dictates against judicial review at this time. *E.g., Ecology Action*, 492 F.2d at 1001; *Citizens for a Safe Environment*, 489 F.2d at 1022; *Thermal Ecology*, 433 F.2d at 526.[15] NRDC's claims concerning the application of the "military functions" rule can be raised and addressed upon judicial review of a final NRC decision on the NFS-Erwin license amendments.[16] We are aware that deferring review until there has been a final agency decision may necessitate additional administrative proceedings if we find that the NRC improperly applied the "military functions" rule. That risk, however, is inherent in a system of judicial review that is limited to final orders. It cannot justify reviewing agency action that is otherwise interlocutory.

Moreover, while deferring review until the NRC issues a final order entails a risk of requiring additional administrative proceedings, it nonetheless has significant practical advantages. First, it is possible

reviewed and NRDC's rights vindicated, if necessary, on a petition to review NRC's final action on the license amendments. *See Citizens for a Safe Env't v. Atomic Energy Comm'n*, 489 F.2d 1018, 1022 (3d Cir. 1974); text accompanying notes 15 -16 *infra.*

12. For example, the court in *Ecology Action* noted that an order denying intervention is reviewable as a final order. 492 F.2d at 1000.

13. The "military functions" rule, as repromulgated by the NRC, does contain a provision specifically allowing the rule to be applied to ongoing proceedings. *See* note 6 *supra.* NRDC did not, however, file a new petition challenging this provision as facially invalid. Rather, aside from its "notice and comment" argument, NRDC's challenge focuses on the NRC's decision to apply the rule to the particular, ongoing proceeding in this case, a decision which is embodied in the agency's June 26, 1980 Order and Notice of Hearing.

14. The example given by the court in *Thermal Ecology* of an order constituting an effective deprivation of rights is an order denying intervention. 433 F.2d at 526.

15. The court in *Ecology Action* suggested a possible exception for rulings that are "so flagrantly wrong and demonstrably critical as to make" reversal a virtual certainty if the petitioner were to lose at the administrative level. 492 F.2d at 1001. This "exceedingly limited" exception, *id.,* would not be applicable here.

16. For the same reason, the "collateral order" exception to the finality rule does not apply. *See Community Broadcasting of Boston, Inc. v. FCC*, 546 F.2d 1022, 1025 (D.C.Cir.1976) ("immediate appeal must be necessary to preserve rights that would otherwise be lost on review from final judgment"); *cf. Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949) (collateral district court order reviewable where effective review not possible on appeal from final judgment).

that NRDC will obtain the relief it seeks from the agency, thereby avoiding judicial review entirely. *See Western Union International, Inc. v. FCC*, 652 F.2d 136, 144 (D.C.Cir.1980). Second, if NRDC does not obtain the relief it seeks, it is likely to challenge the merits of the NRC decision on the license amendments in addition to renewing its arguments concerning application of the "military functions" rule. By deferring review now, the court may be able to consider all such issues in a single review proceeding. Finally, waiting until the NRC has completed the license proceeding will give the court the benefit of a fully developed factual record. *See id.* at 145. NRDC's contention that applying the "military functions" rule to an ongoing proceeding would substantially prejudice NRDC is not a purely legal question that can easily be decided in the abstract.[17] On the contrary, by waiting until the administrative proceedings have been completed, the court can determine whether the limited, "legislative" hearing offered by the NRC in fact substantially prejudiced NRDC.

Similarly, the court will benefit from a more developed factual record in deciding whether the NFS-Erwin proceeding actually involves military functions. Indeed, it would be foolhardy for this court to reach out to decide this issue of virtual first impression on the basis of an incomplete factual record.[18] We are unpersuaded by NRDC's contention that the hearing will produce little additional relevant information on the "military functions" question. In our view, the opposite result is more likely because the agency has every incentive to develop a sound factual record to support whatever final judgment it may reach in this case.

For the reasons set forth above, we conclude that the NRC determination that the NFS-Erwin proceeding involves "military functions" and its decision to limit the procedures in that adjudication pursuant to the "military functions" rule do not constitute final agency action that is subject to judicial review.[19]

## IV. CONCLUSION

NRDC's contention that the "military functions" rule was invalidly promulgated has been mooted by the agency's repromulgation of the rule in accordance with the requirements of section 553 of the APA.

17. NRDC does not contend that, as a matter of law, an agency can never apply new procedural rules in a pending proceeding. Such application is unlawful only if it would cause injury or substantial prejudice. *See Pacific Molasses Co. v. FTC*, 356 F.2d 386, 390 n.10 (5th Cir. 1966); *Sun Oil Co. v. Federal Power Comm'n*, 256 F.2d 233, 239 (5th Cir.), *cert. denied*, 358 U.S. 872, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958).

18. There is another reason for declining to review the NRC conclusion that the NFS-Erwin proceeding involves military functions. Under the NRC "military functions" rule, any time a party requests a hearing in a license proceeding (or in any adjudication for that matter), the NRC must determine whether a military or foreign affairs function is involved. That determination will invariably be made at the outset of the adjudication, when the NRC selects the procedures to be used. If every such "military functions" determination were immediately appealable, judicial review would generally be required twice whenever the NRC applied the rule: once to review the agency's decision concerning military functions and once to review the agency's final decision on the merits of the adjudication. Such a bifurcated system of judicial review conflicts with principles of judicial economy and with the finality requirement of 28 U.S.C. § 2342(4) (1976).

19. We also conclude that these issues are not "ripe" for judicial review. The Supreme Court has stated that a determination of ripeness depends on the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). It further explained that the fitness of the issues for judicial review depends on (1) whether the issues are purely legal, and (2) whether the agency's action is final within the meaning of § 10[c] of the APA, 5 U.S.C. § 704, 387 U.S. at 149, 87 S.Ct. at 1515; *see generally* 5 B. Mezines, J. Stein & J. Gruff, Administrative Law § 48.-01–.04 (1981). We have already determined that the agency action challenged by NRDC is not final under 28 U.S.C. § 2342 (1976), and we conclude that it is also not final under the APA. Moreover, as noted above, the issues raised by NRDC are not purely legal; on the contrary, they are heavily fact-dependent. Thus, under the ripeness doctrine, they are unfit for judicial review at this time.

NRDC has also challenged the application of the rule by NRC to limit the procedures available in the NFS-Erwin proceeding. That decision, however, is not final agency action subject to judicial review. Consequently, we dismiss both petitions for review.[20]

*So ordered.*

---

20. In dismissing both petitions, we grant the NRC's motion to dismiss No. 80–1863 for lack of jurisdiction. We also hereby dissolve the stay granted on September 29, 1980 and extended on October 14, 1981.