965 F.2d 1106
 296 U.S.App.D.C. 144
 CELLNET COMMUNICATION, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and the United States of
America, Respondents,
McCaw Cellular Communications, Inc., Cellular
Telecommunications Industry Association, Amarillo CellTelco,
Ameritech Mobile Communications, Inc., North American
Telecommunications Association, Intervenors.
NATIONAL CELLULAR RESELLERS ASSOCIATION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and the United States of
America, Respondents,
BellSouth Corporation, NYNEX Mobile Communications Company,
McCaw Cellular Communications, Inc., Southwestern Bell
Mobile Systems, Inc., Cellular Telecommunications Industry
Association, Amarillo CellTelco, Ameritech Mobile
Communications, Inc., North American Telecommunications
Association, Intervenors.
 Nos. 91-1251, 91-1253.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 9, 1992.
Decided June 9, 1992.
As Amended Sept. 4, 1992.
Rehearing Denied Sept. 14, 1992.
 
 Donald E. Ward, Washington, D.C., for petitioner Cellnet Communications, Inc. in No. 91-1251.
 Robert J. Aamoth, Washington, D.C., for petitioner Nat. Cellular Resellers Ass'n in No. 91-1253. W. Theodore Pierson, Jr., Washington, D.C., also entered an appearance for petitioner.
 John E. Ingle, Deputy Associate General Counsel, with whom Robert L. Pettit, Gen. Counsel and Laura R. Bergard, counsel, F.C.C., and Robert B. Nicholson and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents in both cases.
 
 
 1
 Charles A. Zielinski, Washington, D.C., for intervenors Ameritech Mobile Communications, Inc., Cellular Telecommunications Industry Ass'n, McCaw Cellular Communications, Inc., NYNEX Mobile Communications Co., and Southwestern Bell Mobile Systems, Inc. in Nos. 91-1251 and 91-1253. R. Michael Senkowski, Theodore C. Whitehouse, Philip L. Verveer, Sue D. Blumenfeld, A. Richard Metzger, Jr. and Martin E. Grambow, Washington, D.C., also entered appearances for intervenors.
 
 
 2
 Eliot J. Greenwald, Washington, D.C., entered an appearance for intervenor Amarillo CellTelco in Nos. 91-1251 and 91-1253.
 
 
 3
 Albert H. Kramer and Robert F. Aldrich, Washington, D.C., entered appearances for intervenor North American Telecommunications Ass'n in Nos. 91-1251 and 91-1253.
 
 
 4
 [296 U.S.App.D.C. 146] William B. Barfield, R. Frost Branon, Jr. and M. Robert Sutherland, Atlanta, Ga., entered appearances for intervenor BellSouth Corp. in No. 91-1253.
 
 
 5
 Donald W. Boecke, Washington, D.C., and Edward R. Wholl, Pearl River, N.Y., also entered appearances for intervenor NYNEX Mobile Communications Co. in No. 91-1253.
 
 
 6
 Before: MIKVA, Chief Judge, SILBERMAN and STEPHEN F. WILLIAMS, Circuit Judges.
 
 
 7
 Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.
 
 STEPHEN F. WILLIAMS, Circuit Judge:
 
 8
 This appeal arises out of a Federal Communications Commission order that initiated a rulemaking proceeding, "clarified" an existing rule, and dismissed a petition to expand the proceeding. Petitioners Cellnet Communications, Inc. and National Cellular Resellers Association ("NCRA") argue that the "clarification" was actually a new rule, and thus that the FCC acted improperly by issuing it without notice and comment. NCRA also argues that the FCC erred by dismissing its petition to expand. We reject these arguments and affirm the FCC's order.
 
 
 9
 * * * * * *
 
 
 10
 Since 1981 the FCC has pursued a policy of licensing two firms to construct and operate facilities for cellular service in every cellular services market. See Cellular Communications Systems, 86 FCC2d 469 (1981), Reconsideration, 89 FCC2d 58, Further Reconsideration, 90 FCC2d 571 (1982). The FCC apparently contemplated that one of these "facilities-based carriers" was to be a "wireline carrier" (the local landline telephone monopoly), the other a "non-wireline carrier". See Cellular Communications Systems, 86 FCC2d at 483-87. The FCC prohibited the facilities-based carriers from restricting resale of their capacity to each other or to "non-facilities-based resellers", companies that owned no cellular facilities but resold capacity purchased in bulk from the facilities-based carriers. See id. at 510-11. The ability of third-party resellers of capacity to engage in arbitrage would tend to prevent price discrimination by the two facilities-based carriers. Id.
 
 
 11
 In October 1988 the Commission rejected a request by Cellular Telephone Company to interpret the ban on resale restrictions as containing a limited exception (substantively irrelevant to the present suit), but decided to review the rule itself. To launch that process it treated Cellular's request as a petition for rulemaking, and invited public comment. Cellular Telephone Co., 3 FCC Rcd 6274-75 (1988).
 
 
 12
 In December 1988 NCRA submitted a petition seeking to broaden the proceedings. The petition said that facilities-based carriers were circumventing the rules established by the FCC to ensure competition, and asked the FCC to investigate these anticompetitive practices and to reaffirm and enforce its prohibition on resale restrictions. It asked the FCC to require carriers to operate their wholesale arms at a profit, apparently assuming that the FCC already required carriers to maintain separate wholesale and retail operations. (Another party expressly asserted that such a requirement currently existed and sought its elimination.) NCRA also asked the FCC to address its "unbundling" policy, i.e., its policy barring carriers from supplying cellular equipment and service as a package. On December 23 NCRA submitted an "Emergency Petition for Declaratory Ruling" that incorporated the petition to expand the proceedings and provided additional evidence; it explained that this petition was intended as a procedural "vehicle" by which the Commission could commit itself to vigorous enforcement of the unbundling policy. NCRA Petition at 54.
 
 
 13
 The Commission responded to these petitions in March 1991. It reaffirmed the general policy of prohibiting resale restrictions but issued a Notice of Proposed Rulemaking--suggesting adoption of Cellular's proposed exception and asking for comment [296 U.S.App.D.C. 147] on the subject. See Petitions for Rule Making Concerning Proposed Changes to the Commission's Cellular Resale Policies, 6 FCC Rcd 1719, 1720-21 (1991) ("Notice "). The Notice also dismissed NCRA's petition to expand the rulemaking into a general inquiry into anticompetitive practices, on the ground that the evidence did not justify such an investigation. Id. at 1724. And in a passage purporting to clarify the rule against resale restrictions, the FCC said that it had never required carriers to establish separate wholesale and resale operations, or to charge separate wholesale rates. Id. at 1726. This Notice is the order on review here.
 
 
 14
 On the same day the FCC issued another Notice of Proposed Rulemaking, this one on the subject of unbundling. Bundling of Cellular Customer Premises Equipment and Cellular Service, 6 FCC Rcd 1732 (1991) (Bundling Order). In the same order, however, it dismissed NCRA's "Emergency Petition" for a declaratory ruling, id. at 1735, but noted: "According [sic], we will not rule on the instant petition for declaratory ruling at this time. However, the comments and reply comments ... will be made a part of the Notice of Proposed Rule Making." Id. at 1736 n. 9. Thus, in essence, it opened up consideration of the issue that NCRA proposed be considered, but withheld any immediate issuance of the special confirmatory declaration that NCRA sought. NCRA filed a petition for review of this order, but this court dismissed it for want of finality. National Cellular Resellers Ass'n v. FCC, 961 F.2d 963 (D.C.Cir.1992).
 
 
 15
 * * * * * *
 
 
 16
 First we address the argument (made by both Cellnet and NCRA) that the FCC's purported clarification of the ban on resale restrictions actually changed the rule, and thus was unlawful for want of notice and opportunity to comment. See 5 U.S.C. § 553 (1988).
 
 
 17
 There is a preliminary jurisdictional hurdle. The FCC argues that we lack jurisdiction because the petitioners failed to raise the issue either initially or in the petition for rehearing, see 47 U.S.C. § 405(a)(1) (1988 & Supp.1991). FCC Brief at 28 n. 33. But comments by other parties raised the issue, one suggesting that the existing rule required separate wholesale and retail operations, see Joint Appendix 151-62, which if true would be inconsistent with the Commission's "clarification", and another explicitly suggesting a round of notice and comment to resolve the issue, see id. at 329 n. 6. Consideration of the issue by the agency at the behest of another party is enough to preserve it, see Washington Ass'n for Television and Children v. FCC, 712 F.2d 677, 682 & n. 10 (D.C.Cir.1983), so long of course as the issue was raised in a timely fashion, see Coalition for the Preservation of Hispanic Broadcasting v. FCC, 931 F.2d 73, 77 (D.C.Cir.1991).
 
 
 18
 All agree that the FCC's policy on resale barred facilities-based carriers from restricting resale to non-facilities-based resellers and from discriminating against purchasers for resale. Cellnet and NCRA argue that the FCC also required facilities-based carriers to maintain separate retail and wholesale operations. Such a separation requirement would make it easier for the Commission to monitor compliance with the ban on resale restrictions; otherwise facilities-based carriers might by covert discriminatory pricing or other terms discourage purchase by parties interested in resale. In its Notice the Commission stated that no such additional requirement ever existed. See 6 FCC Rcd at 1726.
 
 
 19
 Cellnet appeals to a passage accompanying the initial statement of the rule:
 
 
 20
 We shall require that AT & T and its underlying cellular affiliate provide system capacity to non-affiliated retailers or resellers on a non-discriminatory basis and on the same terms and conditions as its own distribution arm.
 
 
 21
 Cellular Communications Systems, 86 FCC2d at 511 (emphasis added). Cellnet essentially argues that the reference to the terms of sale to the cellular affiliate's "distribution arm" implies a requirement that [296 U.S.App.D.C. 148] such an arm exist as a separate entity for retail sales. But the FCC was responding to a specific proposal by AT & T that included such separation, so the wording is understandable without inferring any affirmative requirement. The statement of a dissenting commissioner in Cellular Communications Systems supports the FCC's current interpretation. Commissioner Jones complained that the Commission had failed to require "the structural means to compel a wholesale tariff", and explicitly suggested "a resale entity within the wireline cellular subsidiary" as such a structural means. See id. at 643. Jones clearly believed that the majority had required no such entity. And on reconsideration the Commission asserted, "We have sought to promote a second tier of cellular service competition, at the retail level, by barring any prohibition on the resle [sic] and shared use of cellular services", Reconsideration, 89 FCC2d at 72, not even hinting at any requirement of separate wholesale and resale operations. At most the passage relied on by Cellnet was highly ambiguous, and the Commission was free to clarify it, at least in the direction that it chose.
 
 
 22
 Cellnet points out that the regional Bell Operating Companies ("BOCs") that succeeded to AT & T's local telephone service monopolies organized separate wholesale and resale operations. But the existence of separate operations hardly establishes their mandatory character; either independent business reasons, or simply a cautious interpretation of the ambiguous Commission rule, may explain the BOCs' behavior. Indeed, the Commission has explicitly assured the BOCs that it "has never established specific requirements regarding the structure of resale proposals." Bell Atlantic Mobile Systems, Inc., File No. 29029-CL-L-84, Mem.Op. at 5 n. 13 (Com.Car.Bur. July 12, 1984).
 
 
 23
 The petitioners also find confirmation of their view in two sentences in an order holding that BOC-affiliated cellular licensees need no longer market cellular equipment through a separate operation. The FCC said, "In all cases ... the cellular operating companies provide cellular services to the co-owned reseller on the same terms and conditions as service is provided to other resellers." Furnishing of Customer Premises Equipment, 57 Rad.Reg.2d (P & F) 989, 991 n. 13 (1985). But on its face the sentence is no more than a statement of practice as perceived by the Commission, not a statement of Commission requirements. Later the Commission said, "The competition which we have mandated at the wholesale level through the licensing of competing systems, and which we have fostered at the retail level through the encouragement of resale, should be adequate to discourage anticompetitive practices." Id. at 994. As the ban on explicit resale restrictions was surely an "encouragement" and "foster[ing]" of resale activity, even if the monitoring of compliance was defective, the sentence takes petitioners nowhere.
 
 
 24
 Cellnet's strongest cite is James F. Rill, 60 Rad.Reg.2d (P & F) 583 (1986). There the FCC said:
 
 
 25
 [W]e observe that because New Vector is an affiliate of former Bell-system wireline companies, it is also subject to certain Commission Rules which require, among other things: ... the establishment of a two-tiered marketing approach (wholesale and retail) whereby all resellers must be offered services on the same terms and conditions as offered to the affiliated retail entity.
 
 
 26
 Id. at 598. This "observ[ation]" about Commission requirements was not necessary to the case's holding, which simply allowed a wireline company, New Vector, to buy a non-wireline operation outside its market. So while the comparative clarity of this advice to New Vector makes us sympathetic to Cellnet's argument, the statement remains dictum. The decision nowhere cites or discusses the FCC's prior statements of policy on resale; for all we know, the issue was not briefed. Under the circumstances, we can hardly read the statement as authoritative evidence of the meaning conveyed by the prior rule.
 
 
 27
 Accordingly, we hold that the FCC's denial that it required separate wholesale and resale operations, Notice at 1726, resolved an ambiguity as to whether or not this was [296 U.S.App.D.C. 149] the case. As the Notice clarified, rather than changed, the rules, the Commission properly issued it without notice and opportunity for comment. See Chemical Waste Management, Inc. v. EPA, 869 F.2d 1526, 1534 (D.C.Cir.1989).[1]
 
 
 28
 * * * * * *
 
 
 29
 The three claims that NCRA raises independently of Cellnet can be disposed of quickly.
 
 
 30
 1. NCRA now argues that the FCC's cellular service policies violate its statutory obligation to require common carriers to file tariffs for interstate services, see 47 U.S.C. § 203(a) (1988), and it adds that the FCC erred in failing to consider this issue in the proceedings below.
 
 
 31
 However, neither NCRA nor anyone else raised this issue with sufficient specificity before the agency. NCRA had said:
 
 
 32
 In states where strict tariffing requirements are not imposed, the Commission should require carriers to keep and make available ... rate cards for wholesale and retail rates.... NCRA does not believe that marketplace conditions at this point warrant the imposition of traditional rate-of-return regulation at the federal level, such as standard tariffing requirements.
 
 
 33
 NCRA Petition to Expand at 55-56. This passage raises the issue of in-state tariffing requirements, not that of interstate tariffing requirements under § 203. While a footnote calls the issue of federal tariffing requirements under § 203 "a serious question", id. at 56 n. 38, raising a serious question is not asking for relief.
 
 
 34
 NCRA says that the FCC's response--a rejection of NCRA's request that the FCC institute filing requirements, and a suggestion of the possible anticompetitive implications of NCRA's proposal, see Notice, 6 FCC Rcd at 1725--indicates that NCRA's footnote alerted the FCC to the issue. But the FCC's response was in the spirit of policy analysis, not attempted refutation of a statutory claim. Because the character of the FCC's response was almost certainly due to NCRA's phrasing, NCRA should have drawn the FCC's attention to the § 203 issue in a petition for reconsideration. See 47 U.S.C. § 405; Action for Children's Television v. FCC, 906 F.2d 752, 755 (D.C.Cir.1990). As we have said before, a sow's ear claim does not deserve a silk purse response. City of Vernon v. FERC, 845 F.2d 1042, 1047 (D.C.Cir.1988).
 
 
 35
 2. NCRA also argues that the FCC erred by refusing to expand the rulemaking proceeding into an inquiry into competitive conditions in the cellular service industry generally.
 
 
 36
 The FCC argues that the dismissal of NCRA's petition was an interlocutory order, essentially no more than a decision on the scope of its ongoing consideration of the resale restriction issue. So it is; as such it lacks the finality required for review under 28 U.S.C. § 2342(1). Thus, immediate review of the claim (as so formulated) is precluded. See Natural Resources Defense Council v. NRC, 680 F.2d 810, 815-17 (D.C.Cir.1982).
 
 
 37
 As NCRA points out, however, its petition to expand the rulemaking is functionally similar to a petition to initiate a rulemaking. Denial of such a "stand-alone" petition would be final; while judicial review might lead to interference with the agency's ordering of its priorities, it would not directly interfere with its decisions as to how to frame the inquiry already opened.
 
 
 38
 Unfortunately for NCRA, an agency's refusal to initiate a rulemaking is evaluated with a deference so broad as to make the process akin to non-reviewability. See American Horse Protection Ass'n, Inc. v. Lyng, 812 F.2d 1, 4-5 (D.C.Cir.1987); WWHT, Inc. v. FCC, 656 F.2d 807, 818 (D.C.Cir.1981) (this court overturns a refusal to institute rulemaking "only in the rarest [296 U.S.App.D.C. 150] and most compelling of circumstances").
 
 
 39
 NCRA does not meet this standard. Apart from a strained effort to find internal contradictions in the Commission's statements, see NCRA Brief at 38-39, NCRA relies on analyses performed by the FCC's staff and alluded to by FCC Chairman Sikes in a letter to a senator. These analyses were not adopted by the FCC and were not even part of the record below. As to NCRA's evidence of widespread anticompetitive practices, NCRA would have to show not just the existence of such practices, but that they were so overwhelmingly prevalent that it was irrational for the FCC to withhold the proposed broad inquiry while pursuing the narrower ones now launched, relating both to Cellular Telephone Company's proposal for a limited exception to the resale restrictions and to unbundling. The evidence actually offered falls far short. For example, NCRA stresses that the two licensees in each market often offer services at the same price; but identical pricing by oligopolists is hardly proof that their relation is not competitive (as they are oligopolists we already know that "pure" competition is absent). Their other evidence, e.g., that some cellular resellers have been driven from the market, that some cellular licensees operate their retail arms at a loss (thus implying that they inflate wholesale rates in order to drive competing resellers out of business), etc., see NCRA Brief at 45-46, is thin enough that the FCC could reasonably decide, in light of the novelty of the service and the speed of technological change, to wait and see how the market evolved under current regulations before addressing proposals for their complete overhaul.
 
 
 40
 3. Finally, NCRA argues that the Commission's discussion of the bundling issue in its Notice somehow deprived it of something. Recall that NCRA raised the bundling issue in both (1) its Petition to Expand the rulemaking related to resale restrictions and (2) a separate "Emergency Petition". The Commission launched the inquiry. See Bundling Order, 6 FCC Rcd 1732. In the Bundling Order it somewhat confusingly dismissed the "Emergency Petition" but also said it was not ruling on it and that comments would be received as part of its unbundling rulemaking. See p. 5 above. As we have noted, this court has already dismissed this claim for want of finality. See id.; National Cellular Resellers Ass'n v. FCC, supra.
 
 
 41
 In addition, in the Notice addressing resale policies, the FCC dismissed the component of the Petition to Expand devoted to the bundling issue. It observed, correctly, that the "bundling issue is addressed in a separate proceeding", Notice, 6 FCC Rcd at 1729 n. 41. NCRA complains here of this "dismissal". Looking at the "dismissal" here in context of the Bundling Order that effectively initiated the inquiry NCRA sought, we find nothing more final than did the panel reviewing that order. NCRA has not identified any way in which the Commission's disposition differs in substance from what it sought. If its concern is assurance that the existing unbundling rule is still in effect, that is true as a matter of law and needs no Commission action.
 
 
 42
 Accordingly, we reject the petitions for review.
 
 
 43
 So Ordered.
 
 
 
 [1]
 In a Petition for Rehearing and Suggestion for Rehearing En Banc, Cellnet says that it argued only that the FCC has required separate wholesale rates, not that the FCC has required separate wholesale and retail operations, and that the latter policy is only evidence of the former. But since we deny the existence of any policy requiring the separation of operations, such a policy cannot be evidence of a requirement of separate wholesale rates; and Cellnet provides no other evidence of such a requirement